Good morning, everyone, and welcome. I'm Anthony Johnstone here from Missoula, Montana. I'm pleased to be joined today by my colleagues Marcia Berzon from San Francisco and Andrew Horowitz from right here in Phoenix, Arizona. We have a couple of cases to submit this morning. First, No. 221905, Pimentel v. Garland will be submitted on the briefs. And No. 22271, Donaire Alvarado v. Garland, also submitted on the briefs. Our first case for argument today is Estrada-Hernandez v. Garland, No. 22629, if counsel are ready. Mr. Favela. Good morning, Your Honors. My name is Marcos Favela. I'm here on behalf of the petitioner, Mr. Estrada-Hernandez. First of all, thank you for having me here today. I appreciate the opportunity. I'd like to discuss what this case is about and direct the Court to the relevant evidence that I believe is most important to consider. Here, the Board of Immigration Appeals held that Mr. Estrada-Hernandez presented no individualized evidence in support of a future harm if he were to return to Mexico. We believe that he did present individualized evidence. I'm having a little trouble hearing. Yeah, would you pull the microphone a little closer to you? Thank you, Your Honor. In this case, Mr. Estrada-Hernandez did present individualized evidence that he would be harmed in the future if he were to return to Mexico. The Board of Immigration Appeals held that he presented no evidence at all in support of a future harm in Mexico. Because they stopped their analysis there at the individualized level of harm, they didn't consider the country-conditioned evidence in regards to the specific argument that we're presenting here to the Court today, which I believe is the most relevant one. The country-conditioned evidence was considered when they considered the risk of group persecution, correct? Correct, Your Honor. There were a few arguments presented throughout this case, from the trial level to the various appellate levels. We believe that before this Court, what is relevant is a disfavored group analysis. Right. I want to ask you about that. They considered the country-conditioned evidence, the BIA, in turning down the group persecution analysis. Does that consideration of that evidence carry over? They found it fairly weak, and I must admit, looking at the country-conditioned report, it doesn't present a compelling case for what does that mean with respect to the individualized persecution analysis? Your Honor, I would like to clarify, I believe, what the record states from the Board of Immigration Appeals. There was a disfavored group analysis, but there was also a separate analysis in regards to respondent being a member of a group that has... Right, right. I understand. There's two ways to prove entitlement to asylum, as Judge Berzon pointed out, in the opinion you're relying on. As to one of them, the Board of Immigration Appeals did consider the country-conditioned report. As to another one, it did not, because it found no individualized risk. You're arguing that you had some evidence of individualized risk, and I tend to agree with you. So my question is, does its analysis of the country-conditioned report with respect to the other prong carry over to this prong? Thank you, Your Honor. I do understand the Court's question a little better now. In regards to the respondent, he is asserting individualized risk of future harm. And part of that analysis, which he's not presenting today, is only individualized harm based on any particular social group. But here it's a disfavored particular social group, which addresses specifically his individualized harm. If I understand Judge Hurwitz's question, it's the country-conditioned report. We're discussed in a pattern and practice discussion. Correct, Your Honor. But the conclusion was that it wasn't sufficiently pervasive to be a pattern and practice. Correct, Your Honor. So it wouldn't necessarily carry over, because that's not what it's used for with regard to the disfavored group. Correct, Your Honor. In that analysis, in the pattern or practice analysis, the there's a mixture of individualized evidence as well as country-conditioned evidence. So it would be a different standard. It wouldn't be that we're looking for so much evidence, as in the past pattern or practice, that that's sufficient for a respondent petitioner to show his burden. Here, there would be a lesser standard of country-conditioned evidence if he could also show individualized risk of harm. And what was your evidence of individualized harm? Yes, Your Honor. Thank you. Individual evidences that we'd like to bring up first is the context of the assault on the petitioner, Mr. Osorio Hernandez. While it was brought up by the board that he suffered an assault in the immigration judge's decision and the Board of Immigration Appeals decision, there is no mention that it was on account of the fact that he was viewed as a gay Mexican person at the time of child, currently a They only mentioned the assault in passing. And when they concluded, they concluded that it wasn't relevant at all to the analysis. However, within the context, this Court should consider that he was stripped, he was beaten, he was hit with cactus, and he was told specifically by two adults. It is because you, rather than use specific words, because he was gay. But the argument is that it was 35 years ago and by December he would be singled out. It was quite some time ago. But the board, the agency, finds that there was no evidence. There was evidence. That may be not alone enough to carry the burden. So assume that that's some evidence relative, perhaps weak because of its age. What other evidence was there of his individualized risk of harm? Yes, Your Honor. There's a few more things I'd like to bring up to the Court. One is there was a transcript of the reasonable fear interview. The transcript of the reasonable fear interview, the petitioner stated that he was describing his feminine behavior, his social behavior, which supports the fact that if he were to return to Mexico, he would be viewed as a gay Mexican man. Okay, so you've got those two things. Just tell me what else there is and leave aside the country conditions report for a second. In addition, he is a HIV positive gay Mexican man. That is something that is also an HIV positive individual. That fact was not considered at all. But Mr. Fevella, did you present that as part of the particularized social group analysis? Is that part of your appeal? There were two in the appeal before this Court? No, I'm sorry, before the BIA. Before the BIA, there was a different, there was two different social groups. One of them is waived here today. It was previously waived and that is the HIV positive individuals. That fact should also be considered within the context of the gay Mexican man, particular social group, and it was not. If he's going to get medical care, people are going to, somebody's going to know that he's gay likely. Yes, Your Honor, that's the argument that we would like the Court to consider. And those are three of the relevant facts. There's one additional one. It's more of a mitigation fact. The agency brought up the fact that there is some time that the petitioner spent in Mexico. It's unclear specifically whether that was one, two, four years, but it was a limited time. The record does show that. I assume part of the problem in a case like this is that the petitioner was probably legally in the larg. Is that fair? Correct, Your Honor. Yes, the record does show that he was married here in the United States in 2004 and he built that relationship here in the United States. And that's something that likely took a few years. Can I ask a question on a different point? And it may not be relevant to today's proceedings. Did the BIA ever get to the question of whether even if a fear of persecution had been established, there was sufficient evidence that your client would be persecuted by or with the consent of the Mexican government? Is the country conditions report the only evidence on that point? Yes, Your Honor, the only contribution evidence. But I don't know. In your view, did the BIA just not treat that part of the analysis? I'm sorry, can you repeat? In your view, did the BIA just not treat that portion of the analysis? Because if it if it had found there was insufficient evidence to show government acquiescence or participation, we'd be reviewing that for substantial evidence. So what's your view of the record here? Your Honor, I believe that the agency did not reach that point. They cut the decision short of the fact that there was no individualized evidence. They didn't discuss country conditioned evidence. They didn't go that far. No, no, I'm not worried about what evidence they're considering. I'm worried about whether the agency, let me just tell you, ever got to the issue of whether or not even if you'd shown a reasonable fear or probability of persecution in Mexico, if returned, that persecution would occur by or with the consent of the government. Do you agree? I agree, Your Honor. So if we if we were to grant the petition, that would be an issue for the agency to resolve, among others on remand? Yes, Your Honor, I believe there are quite a few issues for the agency to resolve because they cut their decision short at the individualized evidence factor. Mr. Fevella, do you want to reserve any time for rebuttal? Yes, Your Honor, I'd like to reserve the remaining time. Thank you. Okay, we'll give you two. Thank you. Mr. Anderson. Good morning, Your Honor. I'm here to please the Court. Eric Anderson, representing the Attorney General. Mr. Estrada Hernandez is a Mexican-American immigrant. He is a Mexican-American immigrant. He is not eligible for asylum in the United States. He is eligible, and he did apply, for withholding of removal and protection under the CAT treaty, which requires him to show that there is a clear probability, a more likely than not standard, that he would either be persecuted or tortured in Mexico. The Immigration Judgment Board considered the evidence and the claims, found that he failed to make the required showing, and this Court should deny the petition because the record does not compel the contrary. If we were reviewing, I must say, if we were reviewing a finding that was procedurally the way you represent it, I would find it very hard to overturn it. My concern is, I think, the one we explored with your colleague, when it got to the individualized risk, this favored group analysis, the Board said there was no evidence of individualized risk. And I think a fairer statement would be there was some, but it was not very compelling. What do we do with that? In other words, they never got to the second part of the analysis because they cut it off at the first. Respectfully, Your Honor, I think the full sentence shows that the Board said that there was no evidence sufficient to meet the standard. So I'm looking at page two of the Board's decision, or page four of the administrative record. The last paragraph on that page, in two places, the Board says, Respondent has provided no evidence establishing that he is likely to be singled out for persecution. And then the next sentence ends, does not establish the requisite likelihood that he would be subject to an individualized threat of future persecution. The second one, I think, is closer to what you've described. But the first one is presented no evidence that he would submit. No evidence that it is more likely than not to happen, Your Honor. That's the second sentence. Read the first sentence. But he doesn't have to have evidence that it's more likely than not to happen with the disfavored group analysis. With the disfavored group analysis, the disfavored situation where the more disfavored, essentially, the less you have to show. But all you have to show is that there is some likelihood that you'll be singled out. You don't have to show that there is a more likely than not just on that. It's the two together that do the work together. Right, Your Honor. Absolutely. And I'm the last person in the world to direct you to Wackery repeats, this is a withholding case. He has to ultimately meet the more likely than not standard. In fact, it says several times, it is not often likely to happen that a withholding of removal case will be resolved favorably on the basis of a disfavored group claim. And what we have here... That may be true. And I suspect it is true here. I think it's a case in which at the end of the day, petitioner is probably not going to be successful. The question is this, Judge Berzon asked, you can have a slight individualized risk and have great evidence on the disfavored group side and get asylum. Now, the difficulty here is the BIA, because it found no individualized risk, never moved to look at the disfavored group analysis. And therefore, for all we know, on this record, it doesn't appear to me to be compelling, but that's not our decision. It's the board's. I have two responses to that, Your Honor. First, there is no doubt the immigration judge and board both discussed this incident in which he was beaten at the age of 11 nearly 40 years ago. They were perfectly well aware that this occurred. The immigration judge addresses it on page 4 of his decision, AR 62. The board addresses it again on the same page I already cited. They were perfectly well aware of this. They did not forget it in the next paragraph. The second thing is, of course, when you're treating the group as a disfavored group, you've already resolved a certain level of country condition evidence, right? If there was no evidence that the group of gay Mexican men was a disfavored group in Mexico, you wouldn't even get to a disfavored group analysis. They've treated it as such for this. Where have they treated it as such? It's a two-step analysis, and as I understand it, if you find no individualized risk, you don't need to move on to whether or not it's a disfavored group, correct? That's right. If there's, well, it is, I agree, a sliding scale. If there is absolutely no individualized risk. There's nothing to put on one side of the scale that doesn't slide. Right. There is still a burden, a burden on the applicant to produce evidence of individualized risk, and we know Mr. Estrada Hernandez testified he has never been threatened on this basis, that he does not fear the Mexican government will harm him because of his status as a gay Mexican man or as an HIV positive individual. We know that this one incident occurred, that he then spent three more years in Mexico not being harmed. We don't actually know that he spent three more years. Oh, I see, before he left. Yeah, before he came at the age of 14, Your Honor. And then there's the issue of the returns he's made after he came to the United States. We know he, at his first departure, he had a burglary tools conviction. He voluntarily departed the United States. And I accept his testimony as credible that he returns soon thereafter. That's what the evidence is. He returns soon thereafter. Then in the year 2000, he had multiple returns in a short period of time. Why is all this largely irrelevant? Because the question, first of all, on the second sentence that you relied on, they said there's no evidence established that he is likely to be singled out for persecution. And we therefore discern no error in the immigration jurors finding that they respond to this general claim based solely on the threat to just their favorite group. So they were clearly treating this as having only a disfavored group and no evidence. And so therefore, what you're kind of evidence you're pointing to might be relevant in the long run. But the problem here is that they began with the fact that they're only looking at the disfavored group language evidence because there's no interventionalized evidence. And that's inaccurate. Your Honor, it came three sentences after they were describing the incident that happened at the age of 11. OK. The board the board was aware of this evidence. Mr. Anderson, I guess you talked about what we know. We don't know that the board knew of all the other evidence of the contemporaneous evidence, current evidence that provides a much stronger link between this individual and the disfavored group in terms of his mannerisms. And there's no discussion of that at all. Is there were there any obligation to discuss that as part of the individualized risk? I don't think so, Your Honor. I think that that all may very well be true, but it doesn't show an individualized risk. It does not qualify as evidence of an individual risk of harm. It is the it was the same of everyone who has the same mannerisms who. But let me let me change the facts for you for a second. Let's assume and we don't hear that we have overwhelming evidence that this is a disfavored group and the group is subject to persecution. If we had that, the board would have never gotten to that in this case because it would have found no individualized risk. Correct. I'm sorry, Your Honor. Sure. It's a two step analysis. Yes. Is there an individualized risk? It's a sliding scale. No individualized risk. We don't worry about the weight of the evidence as to a disfavored group and whether a person is a member of it, etc. So I'm asking you to assume that there was overwhelming evidence that the groups that he claimed to belong to or is a disfavored group and that they were subject to persecution in Mexico. Would then he have enough evidence to at least require the balancing? The I can't speak for the board. Well, see, my problem is because they didn't balance at all. And because we can't evaluate the other evidence because they never got to it. It's not our job. What we have here is them saying, I don't care how good your evidence about the disfavored group is. You don't enter that gateway because you haven't shown any individualized risk. That's what troubles me about the case procedurally. Yes, Your Honor. And just to respond to the question that that's there, I think the board and the immigration judge were both aware of this. There's no indication they forgot in the meantime. And unless the court has any other. Except that the the incident has two pieces of relevance. One is that he was, in fact, harmed because he was gay. But under underlying that is that he was recognizably gay, even at the age of 11. And for that purpose, it has a different salience. And that wasn't considered either. I agree, Your Honor, that it's not explicitly addressed. If it didn't have that quality, it wouldn't have been relevant at all for withholding on the basis of a particular social group claim. So I think the board gave him that, that it was on the basis of a particular social group. But it didn't it didn't consider the by saying it all happened 35 years ago, they were discounting as having any relevance to his prior to his present likelihood of risk, which presumably is what led to this notion that there was no evidence. But first of all, there was evidence of that. He'd been harmed during five years. But second of all, that incident is evidence that he is likely to be obviously gay when he gets there. In addition to other evidence, because he said that he would hang out in gay bars and he and he had HIV. So medical people would know and so on. So there was a fair amount of evidence that he would be. He couldn't slip under the radar screen. I would just say, Your Honor, that's evidence common to every member of this group. Well, no, it isn't evidence common to every member of the group, first of all. And second of all, so what? Well, then it's not individualized risk, Your Honor. And unless the court has any other questions, I'm well over that. Any other questions? Thank you, Mr. Anderson. Thank you. Mr. Fevella, you have two minutes. Your Honor, I don't have any additional argument to present. I am available for any questions, if that may help the panel. Would you speak a little bit more about the cat claim and the level of evidence discussed there? Yes, Your Honor. In regards to the cat claim that Mr. Hernandez is presenting, there is one significant difference in regards to country condition evidence that was considered, particularly for HIV-positive individuals in Mexico. That's not necessarily our argument, that there is a lack of analysis to country condition evidence. But you're not basing it on that group? Correct. Well, correct, Your Honor. Our argument is essentially overlapping with the withholding argument, that there was no individualized consideration other than the HIV-positive side. Well, let me ask you about the cat claim, because unlike the other claim, on this one the board says, we discern no clear error in the immigration judge's determination that the respondent has not established that he will be more likely than not tortured in Mexico, by or with a consenting acquiescence, et cetera. The record doesn't compel a contrary conclusion, does it? You may have some evidence to the contrary, but if we were reviewing this under a substantial evidence standard, we would have to say the board's finding is supported by substantial evidence. You have a high burden, and they said you didn't meet it. I believe that Your Honor may be correct on that. On the cat claim? Yes, on the cat claim. There is one issue for the court's consideration, and that's that the board specifically stated the standard of review there being clear error. The board had the right standard of review, because the board was reviewing de novo. The IJ may have reviewed incorrectly, but the board looked at the record de novo. Doesn't that fix the IJ's error? They should look at it de novo. However, they're saying no clear error. They're articulating a different standard. Well, because they have a de novo standard of review, but they still review for clear error. Those are not inconsistent with each other. They reviewed facts for clear error, right? Isn't that what they were doing? They always review facts. The facts are reviewed for clear error. However, the legal issue is reviewed de novo. If the court finds that they did review it de novo, then I don't have an additional argument. Any other questions? No, I do. Thank you. Thank you. Thank you, counsel. The case will be submitted.
judges: BERZON, HURWITZ, JOHNSTONE